UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES, and LOANCARE, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> STEVEN WEINER, et al., <br><br> Defendants. | Civil Action No. 18-16034 (MAS) (ZNQ) <br><br><br> **MEMORANDUM ORDER** |

This matter comes before the Court upon Defendants Steven and Margery Weiner's (collectively, the "Weiners") Motion to Vacate Entry of Default (the "Motion"). (ECF No. 52.) The United States opposed, (ECF No. 57), to which the Weiners replied, (ECF No. 62). For the reasons stated below, the Court finds good cause to vacate the entry of default entered against the Weiners.

I.      **BACKGROUND**

The United States filed this action against the Weiners on November 9, 2018, seeking the recovery of unpaid federal income taxes, (Compl. ¶¶ 9–10, ECF No. 1.) Specifically, the United States seeks to collect nearly $1.2 million in unpaid federal tax liabilities; $228,000 in unpaid Trust Fund Recovery Penalties (TFRPs) for Steven Weiner's failure to timely withhold, collect, and pay the federal tax liabilities of his dental practice; and to foreclose the corresponding tax liens against the Weiners' personal residence. (Second Am. Compl. ¶¶ 14, 21, 41, 46.) The following month, Loancare, LLC, ("Loancare") initiated a state mortgage foreclosure action against the Weiners and a number of other defendants with an interest in their property at 589 Westwood Avenue, Long Branch, New Jersey, including the United States. (Notice of Removal Ex., at 1, 5–7, *Loancare, LLC v. Weiner*, No. 19-9817, ECF No. 1-3.) The United States removed the foreclosure action to

this Court in April 2019, (Notice of Removal, *Loancare, LLC*, No. 19-9817, ECF No. 1), and the two cases were consolidated, (July 23, 2019, Stipulation and Order, ECF No. 20).

The Weiners were served on December 3, 2018. (Proof of Service for Steven Weiner, ECF No. 3; Proof of Service for Margery Weiner, ECF No. 4.) The United States filed its Second Amended Complaint on August 20, 2019. (ECF No. 25.) With no Answer or appearance by the Weiners, on October 1, 2019, the United States requested the Clerk of the Court enter default against them, (ECF No. 34), which was entered the next day. Four months later, and still with no appearance by the Weiners, the United States moved for default judgment. (ECF No. 41.) On February 28, 2020, the Weiners appeared and requested the opportunity to move to vacate default. (Order 2, ECF No. 48.) The Court granted that motion, and terminated the United States' Motion for Default Judgment. (*Id.* at 3.)

## II.   **LEGAL STANDARD**

The Clerk must enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise . . . ." Fed. R. Civ. P. 55(a). "A judgment setting aside the entry of default is within a district court's discretion . . . ." *Doe v. Hesketh*, 828 F.3d 159, 174 (3d Cir. 2016) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194–95 (3d Cir. 1984)). "The court may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). "In exercising that discretion and determining whether 'good cause' exists, [the Third Circuit has] instructed district courts to consider the following factors: '(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct.'" *Id.* at 175 (quoting *$55,518.05 in U.S. Currency*, 728 F.2d at 195) (second alteration in original). Delay rarely is ever sufficiently prejudicial to prevent vacating default. *See Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656–57 (3d Cir. 1982). "To show a meritorious

defense, a plaintiff must assert defenses that would constitute a complete defense to the action." *World Entm't Inc. v. Brown*, 487 F. App'x 758, 761 (3d Cir. 2012). And "the standard for 'culpable conduct' in this Circuit is the 'willfulness' or 'bad faith' of a non-responding defendant," including "acts intentionally designed to avoid compliance with court notices"—it must be more than "mere negligence." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1182–83 (3d Cir. 1984).

"In cases where default judgment has not been entered, courts in this circuit seem unwilling to deny the motion to set aside entry of default solely on the basis that no meritorious defense exists." *Mike Rosen & Assocs., P.C. v. Omega Builders, Ltd.*, 940 F. Supp. 115, 121 (E.D. Pa. 1996). Courts in this Circuit prefer "cases be disposed of on the merits whenever practicable," *Hritz*, 732 F.2d at 1181; *accord Leeder v. Feinstein*, No. 18-12384, 2019 WL 8105293, at *1 (D.N.J. Dec. 11, 2019), and "are split as to the dispositive nature of [the second] factor," *HEI Investments, LLC v. Black Diamond Capital Appreciation Fund, LP*, No. 15-746, 2016 WL 952338, at *3 (D.N.J. Mar. 14, 2016) (comparing *Allstate Ins. Co. v. Hopfer*, No. 08-4549, 2009 WL 1362612, at *3 (E.D. Pa. May 14, 2009) (granting vacatur while holding that motion to vacate would not be denied on lack of meritorious defense alone), and *Toy v. Haman*, No. 07-3076, 2008 WL 5046723, at *4 (D.N.J. Nov. 20, 2008) (allowing vacatur despite lack of specific presentation of meritorious defenses), with *Foundation Structures, Inc. v. Safeco Ins. Co. of Am.*, No. 08-4763, 2009 WL 2602431, at *4-5 (E.D. Pa. Aug. 24, 2009) (denying motion but granting the movant thirty days to submit meritorious defenses), and *Days Inn Worldwide, Inc. v. Jerbev Corp.*, No. 08-1659, 2009 WL 249244, at *2 (D.N.J. Feb. 2, 2009) (denying motion but allowing the movant twenty days additional time to show a meritorious defense)). This Court has, however, also held that "[t]he greater leniency afforded movants in the entry of default context cannot entirely excuse their obligation to present a meritorious defense," and the "[l]ack of a meritorious defense is, in

3

fact, a dispositive threshold matter in both the entry of default and entry of default judgment context." *Nat'l Specialty Ins. Co. v. Papa*, No. 11-2798, 2012 WL 868944, at *3 (D.N.J. Mar. 14, 2012).

## III.   DISCUSSION

### A. Prejudice to the United States

The Weiners' arguments focus squarely on the three factors set out by the Court of Appeals for the Third Circuit. First, the Weiners assert "[t]he United States has not demonstrated that it will suffer any prejudice . . . , other than the financial costs associated with litigating this case." (Moving Br. 4, ECF No. 52-1.) They contend "[t]here is no allegation that evidence is missing or relevant witnesses have passed away," and "the passage of time has not impeded its ability to prosecute its claims." (*Id.*)

The United States argues it will be prejudiced due to the potential loss of evidence. (Opp'n 5, ECF No. 57.) The United States explains that it plans to argue that certain federal income taxes assessed for the 2006–2008 and 2010–2014 tax years are excepted from the discharge the Weiners obtained in bankruptcy because they willfully attempted to evade or defeat the taxes assessed. (*Id.* at 5–6 (citing 11 U.S.C. § 523(a)(1)(C)).) One way to do that, the United States contends, is by showing the Weiners could pay their taxes, but chose to spend their money on a lavish lifestyle. (*Id.* at 6.) The United States argues it may be prejudiced by the delay because financial institutions do not usually keep records for more than five years. (*Id.*)

The Weiners respond that the United States filed its Second Amended Complaint on August 20, 2019, so its argument that the Weiners' delay caused the destruction of years' worth of bank records should be rejected. (Defs.' Reply 6, ECF No. 62.) At most, they contend, the United States was deprived of financial records for the 2013 tax year. (*Id.*) Further, the Weiners argue that they have been in constant communication with the IRS for years, that the IRS typically

4

collects financial information regarding the debtor's ability to pay, and the IRS has refused to disclose whether it has the financial information the United States contends will be lost. (*Id.*)

The Court largely agrees with the Weiners. Even assuming the delay has caused the loss of certain financial records, the approximately nine-month delay would deprive the United States of documents pertaining to only one of the tax years for which the United States seeks recovery. Further, it is unknown whether that financial information is, indeed, lost. Thus, on the record currently before the Court, the United States' purported prejudice is speculative. Default is a heavy sanction that the Court does not believe appropriate without a more concrete showing of prejudice. This factor weighs in favor of vacating the entry of default.

### B. Meritorious Defense

Second, the Weiners argue they have a partial defense to certain penalties on their personal tax liabilities and the TRFPs. (Moving Br. 5.) They claim "[t]here is doubt as to liability for both sets of these penalties because the IRS has not yet produced evidence that the penalties were approved by an IRS supervisor." (*Id.*) As to the foreclosure action, the Weiners contend they have a complete defense because the IRS cannot foreclose on real property that does not have equity. (*Id.* (citing 26 U.S.C. § 6331(j)(2)(C)).) In particular, the Weiners explain that their property was assessed at $400,000—which is likely now reduced due to COVID-19—and there are two mortgages on the property with outstanding balances of $306,254.28 and $65,609.90, respectively. (*Id.* at 5–6.)

The United States responds that the Weiners first argument lacks a legal basis. Specifically, that, "in this Circuit, the assessments of tax and penalties are presumed correct, and the introduction of certified assessments shifts the burden of production to the taxpayer." (Opp'n 8 (citing *Anastasato v. Commissioner*, 794 F.2d 884, 887 (3d Cir. 1986); *United States v. Fior d'Italia*, 536 U.S. 238, 242 (2002)).) Further, the United States argues "there is authority to suggest

that the Weiners waived their ability to challenge the lack of prior supervisory approval with respect to the assessment for accuracy penalties for 2003 and 2004 by their signing the IRS Form 4549." (*Id.* (citing *Aguirre v. Commissioner*, 117 T.C. 324 (2001)).) Turning to the TRFPs, the United States claims the Weiners' defense suffers from a similar legal deficiency, that they are entitled to the presumption of correctness in district court proceedings, and the Weiners did not challenge the TRFPs in the tax court. (*Id.* at 8–9 (citing *Brounstein v. United States*, 979 F.2d 952, 954 (1992)).) The United States argues, even if it must prove supervisory approval, it can for each TRFPs. (*Id.* at 9 (citing Nichols Decl. ¶ 4, ECF No. 57-3; TFRP Assessment, Ex. A to Nichols Decl., ECF No. 57-3; Pickett Decl. ¶¶ 7, 15, 23, 31, ECF No. 57-2; TFRP Assessment, Ex. A to Pickett Decl., ECF No. 57-2).)

Turning to the Weiners' foreclosure argument, the United States argues the levy provision of 26 U.S.C. section 6331, which limits the Government's ability to levy on real property if the sale would be uneconomical, is distinct from the foreclose of federal tax liens pursuant to 26 U.S.C. section 7403. (*Id.* at 10.) Section 6331's limitation cannot be read into section 7403, according to the United States. (*Id.*) Moreover, by their own estimate, the United States submits, there is $28,000 of equity in the property. (*Id.* at 11.) The United States further takes issue with the Weiners' property assessment, explaining that a Lead Appraiser with the IRS, Stephen Dinklage ("Dinklage"), found the Weiners severely undervalued their property and that their assessment was flawed. (*Id.*)

In reply, the Weiners concede the precedent they cited is not binding, but argue the regular (i.e., *en banc*) decision of the Tax Court is highly persuasive, and the United States has cited no authority rejecting the decision. (Defs.' Reply 4 (discussing *Chai v. Commissioner*, 851 F.3d 190, 221 (2d Cir. 2017); *Graev v. Comm'r*, 149 T.C. 485 (2017)).) With respect to the TRFPs, the

Weiners claim the affidavits cited by the United States are not dispositive, and that the United

States has resisted producing the underlying documents showing supervisor approval. (*Id.* at 4–5.)

Turning to the United States' challenge to their appraisal, the Weiners contend this issue is more

appropriately taken up during a *Daubert* hearing. (*Id.* at 5.)

A notice of deficiency "provides a calculation of the assessments and penalties, as well as

instructions to contest any delinquency before the United States Tax Court." *Matter of Rosemiller*,

188 B.R. 129, 135 (Bankr. D.N.J. 1995). "No penalty . . . [may] be assessed unless the initial

determination of such assessment is personally approved (in writing) by the immediate supervisor

of the individual making such determination or such higher level official as the Secretary may

designate." 26 U.S.C. § 6751(b)(1). "[C]ompliance with [section] 6751(b) is part of the

Commissioner's burden of production and proof in a deficiency case in which a penalty is

asserted." *Chai*, 851 F.3d at 221. "[T]he written-approval requirement of [section] 6751(b)(1) is

appropriately viewed as an element of a penalty claim, and therefore part of the IRS's prima facie

penalty case." *Id.* at 222. "If there is no response within the statutory time period allowed to petition

the Tax Court . . . the IRS assesses a tax, gives the debtor notice of the assessment and demands

payment." *Matter of Rosemiller*, 188 B.R. at 135. "If the taxpayer fails to pay the tax liability after

demand, the amount assessed becomes a lien against all of debtor's property, as of the time of the

assessment." *Id.* (citation omitted). "A Certificate of Assessments and Payments is entitled to a

presumption of correctness." *United States v. Jones*, 877 F. Supp. 907, 912 (D.N.J.), *aff'd*, 74 F.3d

1228 (3d Cir. 1995) (collecting cases).

The Court finds the Court of Appeals for the Second Circuit's opinion in *Chia* persuasive.

Supervisor approval is an element of a penalty claim. *See* 26 U.S.C. § 6751(b)(1). The parties,

however, do not discuss whether a debtor may attack the assessment of an IRS penalty once the

opportunity to challenge the penalty in Tax Court has come and gone. *See Mellow Partners v. Comm'r of Internal Revenue Serv.*, 890 F.3d 1070, 1082 (D.C. Cir. 2018) (declining to consider the debtor's *Chia* argument in the first instance on appeal) (discussing *Kaufman v. Commissioner*, 784 F.3d 56 (1st Cir. 2015) (holding the debtor failed to preserve its written-approval requirement by failing to raise it in the Tax Court proceedings)). The Court believes this issue is better addressed at the summary judgment stage with the benefit of more thorough briefing. Turning to the Weiners' last argument, the Court agrees with the United States: the Weiners have cited no authority to support their assertion that the limitation found in 26 U.S.C. section 6331(j)(2)(C) extends to foreclosure under 26 U.S.C. section 7403. Further, even if there was such a limitation, by their own estimate, there is equity in the property.

### C. Culpability

Third, the Weiners argue their actions were reasonable, explaining that, since 2008, they have retained Sierra Financial Services, Inc. d/b/a Omni Financial ("Omni") to assist them with their state and federal tax issues. (Moving Br. 7.) They claim they paid Omni through February 2020, and thought it was working to resolve their issues in this lawsuit. (*Id.* at 8.) The Weiners assert Steven Weiner communicated with Omni about the case, but Omni never informed them of the default. (*Id.*) They explain that as soon as they received notice of the default, they retained their present counsel and sought the opportunity to have default vacated. (*Id.*)

The United States responds that, "[e]ven if the Weiners' version of events is believed, the Weiners' conduct was nonetheless culpable because they ignored numerous efforts by the [United States] to contact them, and failed to investigate even after the request for entry of default was sent to them." (Opp'n 14 (citing *Hritz*, 732 F.2d at 1182–83).) Further, the United States contends the Weiners' argument that they retained a Florida tax advisor to represent them in New Jersey lacks credibility, and that the evidence they rely on shows he agreed to help negotiate a resolution, but

never agreed to represent them. (*Id.*) The United States argues that, even if the Weiners thought they had representation, they were still aware of the ongoing litigation and are not excused from a basic investigation of the status of the case. (*Id.* at 15.) The United States highlights that the Second Amended Complaint was sent to them in August 2019, the Notice of Default was sent to them in October 2019, and there is no good faith basis to believe the Weiners thought a settlement was actively being negotiated. (*Id.* at 15–16.) In addition, the United States avers that, after its Motion for Default Judgment was mailed to the in February 2020, rather than appear, the Weiners sought to reopen their bankruptcy, evincing their delay was strategic. (*Id.* at 16.)

The Weiners respond that there is no dispute that, after being served with the Complaint, they retained the attorney from Omni to represent them, and assert that they were in contact with, and paid, him through February 2020. (Defs.' Reply 3.) They contend the attorney never advised them of the consequences of the default. (*Id.*) As to their expectations, the Weiners argue "[a]ny reasonable person would think that if the Department of Justice is looking to seize your home and you negotiate an engagement agreement with an attorney to resolve the matter, then the engagement includes providing legal representation to save your home." (*Id.*) The Weiners state that they sought to reopen their bankruptcy on the advice of counsel and the belief it would stay these proceedings and obviate the need for an appearance. (*Id.* at 4.)

The Court finds it reasonable to believe that the Weiners thought Omni was working to resolve their federal and state tax issues, including this action. The Modification of Work Agreement states "Omni Financial agrees to handle your case with the Department of Justice for an annual flat fee of $24,000.00," "[t]his work will include working with the Department of Justice and/or Internal Revenue Service Revenue Officer to attempt to negotiate a resolution on your behalf." (Modification of Work Agreement, ECF No. 52-7.) The text messages Steven Weiner sent

to the Court evince confusion as to the extent of the Omni attorney's involvement. (*See* Text Messages 1, 5, 14, 17–22.) It appears from the attorney's communications with Steven Weiner that he was, at least, helping coordinate the Weiners' response to this action. (*See id.* at 1, 5, 14.) Specifically, it seems the Omni attorney was advising the Weiners to seek to reopen their bankruptcy in order to address this action. (*See id.* at 12, 14.) The Court would loathe to penalize a litigant who sought help handling this matter and who appears to have been acting according to that assistance. Further, despite Steven Weiner being a dentist, the Court declines the United States' invitation to assume he has facility with the litigation process. Accordingly, the Court finds the Weiners did not willfully ignore this action and thus finds the third factor weighs in favor of vacating the entry of default.

## IV.   CONCLUSION & ORDER

After balancing the factors, and in light of the Third Circuit's preference that cases be decided on the merits, *Hritz*, 732 F.2d at 1181, the Court finds good cause to vacate the entry of default.

For the reasons expressed above, and for other good cause shown,

**IT IS** on this 11th day of August, 2020 **ORDERED** that:

1.     The Weiners' Motion (ECF No. 52) is **GRANTED**.

2.     The entry of default entered against the Weiners is hereby vacated.

3.     The Weiners shall file their Answer within seven (7) days of entry of this Order.

ZAHID N. QURAISHI
UNITED STATES MAGISTRATE JUDGE